ROTHSCHILD, J.,
dissents.
hi agree with the majority that a violation of LSA-R.S. 32:171(B), which provides that “[n]o person shall stop a motor vehicle upon any railroad crossing,” does not in and of itself place the entire fault for the accident on plaintiff, requiring summary judgment in favor of BNSF. It is simply one of the factors that may be considered. However, for the reasons stated herein, I respectfully dissent from the majority opinion which finds that there are genuine issues of material fact and reverses the summary judgment granted in favor of Burlington Northern Santa Fe Railway, Co. (“BNSF”).
The majority concludes that there are genuine issues of material fact as to whether: 1) The warning devices were operating properly at the time of the accident; and 2) Whether the train operator complied with LSA-R.S. 32:168 in timely warning motorists of his oncoming approach. I disagree.
Plaintiffs argue that there are genuine issues of material fact regarding whether the bells, flashing lights, crossing gates, and other warning devices worked properly and activated prior to Mrs. Elkins crossing the tracks or after she was on the tracks. They contend that BNSF can produce no evidence to show that the bells, flashing lights, and crossing gates were activated prior to Mrs. Elkins crossing the tracks.
Several witnesses, including Susan Goodson and Garret Candies, have stated that the crossing gates lowered behind Mrs. Elkins after she stopped on the tracks. |2If we assume that the gates did not lower until after Mrs. Elkins was on the tracks, there has still been no showing that the warning devices did not work timely or properly. BNSF asserts that the warning devices activated 28 seconds prior to the arrival of the train at the intersection, in accordance with federal requirements. In support of its motion for summary judgment, BNSF provided the affidavit of L.D. Pellissier, Sr., who was employed by BNSF as the signal maintainer for southeast Louisiana at the time of the accident. He testified that he inspected and tested the signals, lights, gates, and bells at this crossing on April 16, 1999, May 18, 1999, June 16, 1999, June 22, 1999,[8] and June 23, 1999, and they were working properly. On July 22, 1999, he tested the warning devices approximately 1/& hours after the accident and they properly activated, giving 28 seconds of warning time.
Plaintiffs argue that the statement of a witness, Susan Goodson, supports their position that the warning devices did not activate 28 seconds prior to the train reaching the intersection, because Ms. Goodson stated that the train struck Mrs. Elkins’ vehicle only seconds after the crossing gates lowered. However, Ms. Goodson’s statement does not contradict BNSF’s contention that the warning devices timely activated. Her statement that the gates came down only seconds before impact is not inconsistent with BNSF’s assertion that they activated 28 seconds before the train arrived at the intersection. In fact, Ms. Goodson’s statement supports BNSF’s position. When she was asked if she could estimate how many seconds passed between the lowering of the gates and impact, she originally indicated that *1195 she could not make such an estimate. However, she then stated that she heard the train whistle blowing “maybe 30 seconds” before the train got to the crossing, and she was “pretty sure” that the lights were already flashing and the gates were down when she heard the train whistle blow.
| ¡¿Plaintiffs further assert that BNSF received a report from a citizen that the bar gates at the crossing failed to come down when the train passed on May 9, 1999, and they also received a false activation report on May 18, 1999 indicating that the gates were stuck in the down position. Thus, plaintiffs argue that there is no indication that the gates were functioning properly at the time of the accident. However, it is not BNSF’s burden to show that the warning devices were working properly, because plaintiffs bear the burden of proof at trial.
LSA-C.C.P. art. 966(C)(2) provides that if the movant will not bear the burden of proof at trial, the movant’s burden on a motion for summary judgment “does not require him to negate all essential elements of the adverse party’s claim, action, or defense, but rather to point out to the court that there is an absence of factual support for one or more elements essential to the adverse party’s claim, action, or defense.” This article further provides that “if the adverse party fails to produce factual support sufficient to establish that he will be able to satisfy his evidentiary burden of proof at trial, there is no genuine issue of material fact.”
In its motion for summary judgment, BNSF pointed out that there is an absence of factual support for plaintiffs’ claim that the warning devices did not work properly on the night of the accident, and plaintiffs did not present sufficient factual support to establish that they will be able to show at trial that the gates did not work properly. Further, a photograph of the accident site shows that a motorist approaching the tracks could clearly see the crossing gates, as well as the red light ahead of the tracks and the preceding cars stopped at the light. The photograph further indicates that a motorist stopped on the tracks had an unobstructed view down the tracks for quite a distance and should have been able to see an approaching train.
I further disagree with the majority’s decision that summary judgment in favor of BNSF is precluded because there is a genuine issue of material fact | Regarding whether the train operator blew its horn prior to Mrs. Elkins crossing the tracks or after she stopped on the tracks 'due to traffic. Even if we assume that the train operator did not blow its horn until after Mrs. Elkins was on the tracks, this information does not establish any liability of BNSF, because the train was owned by Union Pacific Railroad Company, not BNSF, and the train operator was a Union Pacific employee.
After a thorough de novo review of this matter, I believe that there are no genuine issues of material fact regarding whether BNSF is liable in this case. Accordingly, I would affirm the summary judgment granted in favor of BNSF.

. The affidavit states that he inspected the crossing on "June 22, 1999, the date of the Elkins’ collision.” This appears to be a typographical error, because the accident occurred July 22, 1999, the inspection record indicates that an inspection was done July 22, 1999, and Mr. Pellissier indicates later in his affidavit that he inspected the crossing on July 22, 1999, after the accident.